Please keep your seat until we learn that we're connected. I can wait. I didn't hear what you said, Kim. Would you like me to sit? I'm sure it would be more comfortable for you. Hello? Mr. Robbins, can you hear me? Yes, I can. Okay, you're live in court. Okay, thank you. Please be seated. I'll call the next case of the morning, Rafael Vallegas-Lopez v. Merrick Garland. Mr. Feldman? Yes, Your Honors. May it please the Court, my name is Noah Feldman, and alongside co-counsel Javier Maldonado, we represent petitioner Rafael Vallegas-Lopez. Let me stop you right there. Now, can you hear all right what he's saying, Mr. Robbins? Yes, for the most part, yes. It's a little soft, but I can make it out. Proceed. Yes, Your Honors. I'd like to reserve three minutes for rebuttal. Your Honors, I see the time hasn't started yet. I don't want to take more than I'm allowed. Well, we wouldn't want you to either. Your Honors, Mr. Vallegas-Lopez, petitioner, was a long-term permanent resident, ordered removed based on his conviction under Texas Penal Code Section 15.031, criminal solicitation of a minor, after both the immigration judge and the Board of Immigration Appeals concluded that that conviction qualified as a crime of child abuse, child abandonment, or child neglect under 8 U.S. Code 1227A2Ei. The question here is whether the agency got it wrong. Respectfully, Your Honors, the answer is yes, and for two reasons. First, Your Honors, under the Board's existing precedent in matter of Velazquez-Herrera and matter of Jimenez-Cedillo, an offense which does not require involvement of an actual minor, but instead can include as a victim an adult posing as a minor, does not qualify as a crime of child abuse under the statute. You're saying that's with the BIA's existing authority? Yes, Your Honor. Well, in our ADECO case, I looked at the BIA opinion, and I thought they held the opposite there. And we didn't discuss it much, but that issue reappears in our Fifth Circuit opinion. Didn't the BIA in ADECO say that it was satisfactory that the person was just thought to be underage? Yes, Your Honors, it did. But importantly, in ADECO, this Court was doing two things. One, it was applying... Well, all I'm talking about is what the BIA held, responding to what you're saying is settled at the BIA. It's not that settled, apparently. Yes, Your Honor. So in ADECO, the BIA did hold in its underlying decision, did hold, did rule that an offense, even though it involved an adult posing as a minor, was a crime of child abuse. But after that decision, in matter of humana sedio, which was a precedential published decision, unlike the decision at hand in ADECO, the Board held that a crime not involving an actual minor could not be for a crime of child abuse. And when the Board made that holding in humana sedio, it was looking at a Maryland statute entitled sexual solicitation of a minor, which is virtually indistinguishable from the statute here. And the Board, in that decision, cited to its seminal 2008 case, Velazquez-Herrera, where it came up with its definition, broad definition of a crime of child abuse, and held that for purposes of a crime of child abuse, a child is defined as an individual under the age of 18 years old. Now, there are unpublished decisions both ways. As Your Honor pointed out, in ADECO, there was an unpublished decision where the Board made the opposite ruling. In our brief, we've pointed out multiple unpublished decisions where the Board ruled in our favor. But importantly, in its published decisions, it has always held that a child is defined as an individual under the age of 18. And for that reason, petitioner's conviction here does not categorically qualify as a crime of child abuse. In this Court's case, ADECO v. Garland, it's very important to remember that we were applying Chevron deference to the Board's broad definition. And Chevron deference still applies. But if you look at the Board's definition here in this case, where it realized there was an issue, right? On the record, at 43, the Board actually requested supplemental briefing here. It recognized that in Gimenez-Cedillo, we held that in offense, not requiring involvement of an actual minor is not a crime of child abuse. And then in ADECO, this Court, looking at a statute involving putative minors or adults posing as minors, ruled that it was a crime of child abuse. How do we reconcile the two? And if you look at the Board's decision here, on the record at page 7, the Board did not attempt to reconcile it. It merely pointed to this Court's case in ADECO and said, well, the Fifth Circuit has already looked at this issue and said it wasn't a problem. But, Your Honors, that is all backwards, because all the Fifth Circuit did was give Chevron deference to the Board's broad construction. And if the Board and the agency wants the Fifth Circuit to put away Chevron and instead, using all the tools of statutory interpretation, come up with what this statute actually means, what a crime of child abuse, child abandonment or child neglect means, then we can do that. But to do that, we'd have to discard Garcia v. Barr and we'd have to discard ADECO, because both those cases were explicitly determined by Chevron deference. In fact, in ADECO v. Garland, if you look at Judge Haynes' concurrence, she precisely concurred in that opinion only because this Court was bound by Garcia, in which it held that the Board's definition of a crime of child abuse was entitled to Chevron deference. Did Garcia's definition have anything to do with our issue? Garcia's definition... Yes, it did. We would argue that it did, Your Honor. In Garcia, the Court was looking at a Texas statute, which was Texas... Completed sexual assault of a child. The main argument in Garcia was what was the age cut-off for the purposes of crime of child abuse for a child. But it wasn't law enforcement impersonating a child online or whatever. There was an actual child involved in Garcia. Correct, Your Honor. Matter of definition, but actually a person younger than 21 involved in Garcia. Correct, Your Honor. An actual child under the age of 18, and there was a completed act of sexual assault. So our Chevron deference to Garcia, which may or may not matter, was not on the issue we're talking about. It was on a broader definition of child sexual abuse. Correct, Your Honor. But for the Fifth Circuit to defer to the Board, it was also deferring to the Board's definition of child. And if you look at Garcia, even though there was an actual child in Garcia, the definition of child as articulated by Garcia and as articulated by the Board is an individual under the age of 18 years old. Now, this statute involves individuals under the age of 17 or adults posing as individuals under the age of 17. That definition of minor for purposes of this Texas statute is categorically broader than the Board's definition of child for purposes of the crime of child abuse provision. Now, at the very least, at the very least, this Court should remand to the Board for investigation and explanation and to reconcile its case law. How can it hold in some cases that offenses not involving an actual minor are not crimes of child abuse, and in other cases hold itself bound by Circuit Court cases which merely deferred to the Board? And so for this reason, Your Honor, that's one reason, Your Honors, that this case should be remanded to the Board. Additionally, the Texas statute here is broader than the Board's construction for two reasons. One, as stated, when it includes adults posing as minors, that's broader than the Board's definition of child. The second reason, which was also argued below and argued to this Court, is that unlike various other conviction-related statutes throughout our immigration laws, a crime of child abuse does not include attempt offenses. In this particular statute, if anything, it's an attempt offense because there was no minor ever involved in the offense. This Court has said that very thing. In Shroff v. Sessions, this Court looked at Texas online solicitation of a minor, which was actually the same statute involved in a DECO, and recognized that in previous cases it had held it was an aggravated felony, sexual abuse of a minor, but only as an attempted sexual abuse of a minor. And that's because if you go to the aggravated felony definition within the Immigration and Nationality Act, the last subparagraph, which is U, says in attempt or conspiracy to commit any of the above-mentioned crimes. That same language is in crimes involving moral turpitude, it's in firearms offenses, it's in controlled substance offenses, but it's not in the crime of child abuse provision. And so usually when so many neighboring provisions, including ones enacted through the same legislation, include some language, and this provision does not include that language, we interpret that to mean that this provision excludes that language. And I would argue, Your Honors, that that's important here because the only way that this offense could qualify as a crime of child abuse if it was somehow an attempted crime of child abuse. And as stated, the board's... Well, the statutory language does not include attempt offenses. Now, I understand that ADECO... The government relies heavily on ADECO, and I would like to go back to ADECO and make this point, which is in ADECO v. Garland, you had a pro se petitioner. He was petitioning to this court before this court's decision in Garcia. And if you look through the briefings in ADECO, primarily what's being argued is whether the board's definition is entitled to Chevron, because when ADECO rose up, Garcia had not yet been issued. In addition to the Chevron argument, again, the pro se petitioner also made various arguments about whether you needed an element requiring a relationship to the child, whether it had to be an intentional or malicious act rather than a knowing act, and whether or not there had to be a likelihood of harm element. But nowhere did the pro se petitioner in ADECO raise the argument that his conviction's definition of child was broader than the board's definition. So it was never raised before this court. Now, usually we say when a court makes a holding, its holding includes anything necessary to that disposition. If I recall BIA's opinion in ADECO, we considered this issue, did it not? And it just wasn't raised on petition for review here. But didn't the BIA opinion in ADECO deal with this, who is believed to be a child? Correct, Your Honor. The underlying opinion in ADECO did, but... The BIA did not ignore this issue, but it was ignored on appeal in the briefing you're telling me. That's correct, Your Honor. The BIA, in fact, there was an earlier decision. They had, in fact, reversed an immigration judge in ADECO who held that it was not a crime of child abuse. Proceed. But if ADECO applies based on those circumstances where a pro se petitioner never raises the issue, maybe it applies to the same statute at issue in ADECO, which was an entirely different statute, Texas Penal Code 33.021. But it cannot apply to the statute at issue here, which is Texas Penal Code... You just finished telling me about a BIA opinion dealing with a Maryland statute, and you want us to consider that, and we're forever looking at comparable language in the statutes. So what is relevantly distinguishable about the two Texas statutes? Your Honors, the Texas statutes are close. I would say that the biggest point distinguishing 15.031 from 33.021 is that it's clearly a co-wait offense. It's listed in Chapter 15 of the Texas Penal Code as a preparatory offense. Solicitation has long been a common law and co-wait offense. And a solicitation for purposes of the Texas Penal Code can be committed through a mere unilateral attempt to induce another. It does not have to be a request or a command or, again, an attempt that is received by the other party. It is merely a unilateral request. But, Your Honor, if I may, this Court need not get there because the matter of humanicidio in the Maryland statute controls because this Court gives Chevron deference to the Board on this issue. That's already been settled. And so if there is any discrepancy or confusion, the only option is to remand to the Board to explain the confusion that it has created through its case law and give us a binding decision, hopefully, that thoroughly and reasonably analyzes whether a child, for purposes of this provision, can include an adult posing as a minor. The Board has yet to do that. So the ordinary rule is to remand to the Board to do it. Here, instead of doing that, again, the Board held itself bound by ADECO. But then, in the government's brief, you'll see, I think, at least six different times, the government says that this Court gives Chevron to the Board's definition. So how can both things be true at the same time? How can the Board be bound by this Court's case and this Court merely give deference to the Board's definition? Both cannot be true. And Jimenez-Cedillo must control, because how could ADECO have overruled the holding in Jimenez-Cedillo while at the same time deferring to the Board's definition of a crime of child abuse? I would respectfully submit that that's not possible, theoretically or logistically. And so here we would argue that that is not what happened. Your Honors, I see that my time is running out. Are there any additional questions? Thank you, Counsel. We'll hear you again on rebuttal. Thank you, Your Honors. Mr. Robbins, this isn't optimal, but I hope you were hearing all right, and we'll now learn if we can hear you. Yes, I could hear everything just fine, thank you. And thanks to the Court for allowing me to appear telephonically. I'm disappointed that I wasn't able to get out there, but obviously circumstances prevented me from doing so. But that said, thanks to your Court, and specifically your Court staff for helping to arrange it so that I could appear telephonically. I don't want to put words in your mouth, but I imagine this all kind of worked out for you, didn't it? Didn't have to fly down here. Well, honestly, Your Honor, I would have preferred to go. I was looking forward to the trip. Okay. But that said, may it please the Court, I'm Jonathan Robbins, and I'm here on behalf of the Respondent, Merrick Garland. Good morning to everyone. As you've just discussed with my colleague in some detail during the opening presentation, the critical inquiry in this case is whether the agency properly found that petitioner's conviction under Texas's solicitation of a minor with intent to commit sexual assault statute constitutes a categorical crime of child abuse, child neglect, or child abandonment, as that term is set forth under Section 1227A2EI of the federal statute. Now, I think the parties all agree that the correct analysis here requires a conducting of the categorical approach. That is, we look at the minimum conduct prescribed under the state statute and compare it to the Board's definition of child abuse, child neglect, and child abandonment in the federal statute. Now, as my colleague mentioned here, we're not operating on a clean slate. This court in Garcia and this court in Nodico has already deferred to the Board's broad definition of that term, child abuse, child neglect, and child abandonment. And the Board has explained in its published precedent that this is a unitary concept, and it means any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. The Board has gone on to explain that an actual injury to the child is not required, and of particular pertinence to this case, the Board has also explained that this includes acts that induce a child to engage in sexually explicit conduct. Now, certainly that is a very broad definition. As I've stated, the court has already deferred to that definition. But the Board's definition was deemed reasonable by this court, mostly because the Board's interpretation is consistent with the legislative intent surrounding the statute. We know that the statute was enacted as part of an aggressive legislative scheme, not only to expand the grounds of criminal removability, but also with a specific focus on making things easier for removing people who commit crimes against children. And so with that broad definition in mind, the Board properly applied the categorical approach. We compared the elements of the state statute and looked to see whether they are encompassed by the federal statute. So if we start with the mens re, we see that the state statute requires a mens re of intent. And, in fact, the cross-reference provision to the target offense, the subjectual assault offense, has a mens re of knowing and intentional. So that mens re pretty obviously falls within the federal definition. The federal definition allows for a mens re that goes as low as criminal negligence. So with respect to the first matching, the mens re is clearly encompassed by the federal statute. Then we would look at the conduct. As I've already said, the Board has been very specific here that acts that induce a child to engage in sexually explicit conduct is the type of act that's going to be encompassed by the statute, and that's exactly what is prescribed under the Texas statute. An individual has to request, command, or attempt to induce a child to engage in a sexual assault. I don't think there's any real contention here that the conduct that's outlined in Section 22.011 of the Texas statute categorically encompasses conduct that is sexually explicit. So, again, with respect to the conduct, we have a match. And then, of course, the last thing we would do is we would focus on the age. That also has to match. And that's where this court's decision in ADECO is particularly pertinent because the court was looking at the... Mr. Robbins, excuse me. I may have a little bit of a delay when you know you're being asked a question. Our opinion in ADECO certainly was pretty thin on this point. It seems to me the closest to a holding is in the sentence near the very end of the opinion, and we don't really analyze it, that the idea of perception versus reality of whether this is actually a child, is that a sufficient holding on our part when the issue wasn't even raised until the rehearing petitions? It's my understanding. You can correct me if I'm wrong about that. So I do think that it's binding precedent because if the court had disagreed with the notion that the fact that there could be a law enforcement officer or an adult believed to be a minor, that would have changed the outcome of the case. So I think the court decision has to be read. I take Your Honor's point that there isn't very robust reasoning in the decision, but the outcome of the case would have been different if the court would have disagreed with that. So I do think it does constitute binding precedent, and under a rule of orderliness, any subsequent panel should be bound to follow it absent any intervening authority. That said... What do you make? Let me add to your analysis. What do you make of the decision that's been emphasized here? I wouldn't say that it was in briefing. The Jimenez-Cedillo case, 2020, from the BIA, which I'm reading here on the bench, does that affect our resolution? I don't think so, Your Honor, for a number of reasons. So Jimenez-Cedillo also suffers, I think, from maybe the same problem as Cedillo. It is true that there was a statement in that case, in Jimenez-Cedillo, that says... Let me see if I can find it here. I'm looking at it. ...rather than actually having a minor issue. You don't accept that Jimenez-Cedillo is now a published opinion that has asserted from the BIA's expert interpretation of what is required, that it must be an actual trial? Well, I think it may be an example of loose language by the board, given the fact that it doesn't really address the issue. I can see that the board made that statement, but it sort of appears to be essentially sort of a drive-by statement rather than any actual analysis as to whether or not... It didn't really tackle in any meaningful way this argument that we're starting to see raised in solicitation offenses regarding what happens if the person doesn't actually complete the offense because of the fact that a law enforcement authority intervened. But that said, this issue was raised to the board in this case. This issue was briefed. If you look at pages 26 and 27 of the record, DHS filed a brief in this case explaining why it thought that Jimenez-Cedillo wasn't controlling in this case. So the board did have an opportunity in this case to consider that case when it reached the conclusion that it did here. Now, I know that the court, Your Honor, pointed out that the court in Addico didn't specifically provide any robust reasoning as to why it was rejecting this argument. But I think that might be a reflection of the fact that not a whole lot probably needs to be said. I mean, I think there are... We've certainly cited to a number of cases that have pointed to the fact that the fact that a law enforcement officer ends up being the victim doesn't really minimize the likelihood of harm to a child caused by the perpetrator's knowing solicitation of a purported child with the intent of causing maltreatment to the child. In other words, in order to complete this attempt, the individual still has to have the intent to engage in sexual assault with a child and have committed a step in furtherance of that objective, of that unlawful objective. And so there isn't really any meaningful reason to distinguish between a person who does that and a person who completes the offense with a child versus a person who just... I don't know if good fortune is the right word, but I mean, through happenstance, isn't able to complete the offense because a law enforcement authority intervened. And even though the court doesn't provide much reasoning in the Idiko case, there are courts that have provided further reasoning. The Seventh Circuit's decision in Gadham, the Third Circuit's decision in Mondragon-Gonzalez, these are other courts that have rejected the same argument. And I would also point out that some courts have also sort of tackled this as really an argument of impossibility. What the petitioner is effectively saying is that he couldn't have completed the offense because the individual wasn't a minor. But the courts have roundly rejected, including this one, the notion that impossibility is somehow a defense to this type of crime. And just sort of thinking in the larger scope of the federal statute, I mean, we know that Congress wanted to expand the scope of the ability to enforce removability against individuals who commit crimes against children, and it really would be a very anomalous reading of the statute to interpret the child abuse, child neglect, or child abandonment provision as somehow excluding people who prey on children but just happen not to be able to complete it because they ultimately are caught by officials before they can complete an act. That would really, respectfully, be a very tortured reading of the statute. So while I acknowledge that there is a stray statement in Jimenez's appeal, the government admits that we pointed that out and distinguished Jimenez's appeal before the board in this case, and the board ultimately did the right thing and focused on what this statute requires. And it focused on the maltreatment to the child based on the substantial step taken in terms of coercing, taking advantage of the child's vulnerabilities, taking advantage of the child's susceptibility to coercion, and pointing out that that treatment itself makes solicitation inherently abusive conduct when combined with the intent to commit that sexual assault. I'm on the phone. I just want to make sure I'm not missing any attempts to ask for questions. Were there any questions on that? I don't think so. You can proceed. Okay. So now, one of the other arguments that the petitioner is making is he's trying to reframe the statute at issue here as an attempt crime. He's sort of pouncing on the language of the statute regarding attempts to induce. The statute defines solicitation as a request, command, or attempt to induce a minor into engaging in the sexually explicit conduct. And I think the board correctly rejected this argument because it pointed out that, yes, the statute uses the word attempt, but this isn't a generic attempt offense. Generic attempt offenses have their own elements, and the board has to conduct, has a responsibility to conduct a categorical analysis which requires a comparison of the elements. And because this isn't a generic attempt offense, it can't compare the elements of this as an attempt offense. Instead, what it did correctly was point out that what the statute here prescribes solicitation, and so it conducted the categorical analysis with respect to the elements of this statute. The fact that the statute uses the word attempt doesn't really change the nature of what this is prescribing. The individual still has to take a substantial step in furtherance of the intent, and the intent is to engage in the sexually explicit conduct with the child. So his attempt to sort of reframe this as an attempt crime doesn't really make much of a difference. I mean, solicitation itself is an inchoate crime. So, I mean, I guess he's trying to latch on to the notion that the federal statute doesn't specifically address attempt. But as the board properly noted, all it can do in a categorical approach is compare the elements of the offense that it's dealing with. And because this isn't a generic attempt offense, there are no elements that it can compare to the federal statute as it would with, say, a generic attempt offense. And so given that it was looking at this as a solicitation offense, the board I think correctly pointed out that there really isn't any doubt that if the completed act of sexual assault of a child would have amounted to a crime of the fact that the act wasn't completed doesn't mean that there isn't abuse. But abuse is essentially an intent-driven idea. There's still the intent to commit the sexual conduct with the child. This conduct and acting on that intent specifically involves harm to the child. You know, children, obviously, because of the age difference, are less capable of making these types of judgments than mature adults. You know, again, the Gattam case in the Seventh Circuit, the Third Circuit case in Mondragon, this court and ADECO, they've all pointed to the fact that this is abusive conduct even though ultimately there isn't a completed act. And so with that said, we do think that ADECO is controlling. ADECO was a very similar solicitation statute. It had the same age and belief about age requirements that rendered...the court found that the statute there was not overbroad. So, again, this argument that the petitioner is making with respect to not being able to complete the offense because a law enforcement officer was at the end of the crime instead of an actual child, ADECO couldn't have been reached. The conclusion the court reached in ADECO couldn't have been reached if the court had ascribed to that theory. And so because of that, we think that the binding precedent of this court does control the outcome of the case in that regard. So unless the court has any other questions, the statute here is a categorical match in terms of mens rea, conduct, and age. ADECO really forecloses the petitioner's argument regarding the fact that the belief of the age of the victim would somehow broaden the state statute beyond the scope of the federal statute. And again, just in sum, the federal statute here, to interpret it in a way that wouldn't include the type of people who prey on children but just happen to get caught by a law enforcement officer, I mean, they're still doing the same thing as somebody who completes the act of the child. They have the intent to engage in the sexual assault, and they are acting on that intent. And because of that, there's no meaningful distinction between the two, and we would request that the petition for review be denied. All right, counsel. Thank you for your assistance. We'll hear from... Thank you. Counsel in rebuttal. Yes, Your Honors. A few points on rebuttal. First, Gimenez-Cedillo, the paragraph is at page 794. And at issue in matter of Gimenez-Cedillo, which was a board presidential decision, was whether the respondent there qualified to apply for non-LPR cancellation of removal. Someone convicted of a crime of child abuse is statutorily barred from applying for such relief. DHS, Department of Homeland Security, before the board, said there's no point in remanding this case to the immigration judge because this respondent is statutorily barred from non-LPR cancellation of removal as someone convicted of a crime of child abuse. The board, in its last paragraph, says no, we cannot make that holding because his offense does not require the involvement of an actual child. But it is an adverse discretionary factor to consider when adjudicating his application for non-LPR cancellation of removal. If the board wasn't holding that a crime never involving an actual minor could not be a crime of child abuse, then there was no point for it to remand the case for adjudication of the application for non-LPR cancellation of removal. It's a precise holding. Now, it is true that our brief could have been more precise itself in pointing this court to a matter of humanicidio, but from the very beginning to the immigration judge and to the BIA, we have argued that for purposes of this provision, the element of a child does not include adults posing as children. The board recognized this, and that's why it  to reconcile humanicidio with adhico. And it's very telling, Your Honors, that the government, in justifying the board's decision here, does not cite to the board's reconciliation of humanicidio and adhico, but instead cites to DHS's brief at pages 26 and 27 of the record, which admittedly was a good brief, but was not the board's decision here. And here, this court is charged with interpreting whether the board got it right or whether a remand is required for the board to explain itself. And in the sole paragraph in this decision, where the board was analyzing whether an adult posing as a minor fell within its definition of a child, it merely said adhico says it does. And this court, Your Honors, did not hold that in adhico. It merely deferred to the board's construction. So it is quite odd for the board to then turn around and defer back to this court. Now, Brand X and doctrines of administrative law preclude this court from applying its precedent in light of, in lieu of board precedent which has a contrary holding. This is an ambiguous statute, this court has said. The board gets Chevron deference on the statute, and the sole question is whether the board's application was a reasonable interpretation of the statute. If all gloves are off and this court is going to revisit the statutory question without Chevron, then the question starts anew pre-Garcia. We'd have to look at whether child abuse, child abandonment, or child neglect can include crimes committed by strangers against strangers. There have been arguments whether it only reaches crimes where there's an element of parental care or custody or supervision. That's an argument we would have to look at here. There's a number of arguments. And I would say, if I may, that the government is right. The categorical approach applies here. And when the government reads its definition, all throughout the board's definition is the phrase, a child. In Velasquez Herrera in 2008, you had a respondent convicted of an offense where the child was not an element. Everyone knew he assaulted a child. It was not a crime of child abuse because child was not an element of the offense. And the board has said time and time again, the element of child for purposes of a crime of child abuse is an individual under the age of 18. Or even recently, I'm going to give you another case, matter of Aguilar Barajas, which is a 2021 case issued after a DECO, a person under the age of 18. For those reasons, Your Honor, we request a remand to the board. All right, counsel. Thank you. And to the absent Mr. Robbins, thank you for checking in. Good luck to you. We'll take this case under advisement. Thank you, Your Honor. All right. I'll call the third case and last case. I don't come forward until Petitioner's Council has moved on.